<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FIRST TRENTON INDEMNITY COMPANY,<br><br>               Plaintiff,<br><br>v.<br><br>CHRYSLER INSURANCE COMPANY, ET AL.<br><br>               Defendants. | Civ. No. 10-2588 (DRD)<br><br><u>**O P I N I O N**</u> |

*Appearances by:*

BOROWSKY & BOROWSKY, LLC
by: Erin McDevitt-Frantz, Esq.
59 Avenue at the Common, Suites 101 & 102
Shrewsbury, NJ 07702

    *Attorneys for Plaintiff*

BUCKLEY & CURTIS, PA
by: Alan R. Levy, Esq.
225 Broadway, Suite 2600
New York, NY 10004

    *Attorneys for Defendants Chrysler Insurance Company and DCFS Trust*

<u>**DEBEVOISE, Senior District Judge**</u>

      This action arises out of an automobile accident. On March 20, 2004, Defendant Moran was driving a vehicle leased from DCFS when that car collided with two other automobiles. A passenger in one of the other two vehicles suffered injuries and subsequently instituted a suit

against the drivers and owners of all three cars on March 3, 2005. That suit was resolved by a settlement in which Moran agreed to pay $300,000, while DCFS contributed $275,000. The former sum was paid by Moran's insurer, First Trenton Indemnity Company ("First Trenton"), while the latter was provided by Chrysler Insurance Company ("CIC"),[1] the insurer for DCFS.

This litigation involves a dispute over who bears responsibility for those settlement costs. On April 13, 2010, First Trenton instituted proceedings in the Superior Court of New Jersey, naming as Defendants Moran, DCFS, and CIC. In its Complaint, First Trenton asserts that CIC was Mr. Moran's primary insurer, and is therefore liable for the $300,000 it paid on behalf of Mr. Moran as part of the aforementioned settlement. Additionally, First Trenton seeks declaratory judgment that CIC may not pursue a claim against Mr. Moran seeking indemnification for the $275,000 it paid on behalf of DCFS. Arguing that this Court has original jurisdiction pursuant to 28 U.S.C. § 1332, DCFS and CIC removed the action on May 20, 2010.

First Trenton now moves to remand. In doing so, it notes that both it and Mr. Moran are citizens of New Jersey, and argues on that basis that removal was improper. DCFS and CIC counter by contending that Mr. Moran was fraudulently joined in an effort to defeat federal jurisdiction. They note that First Trenton's Complaint includes no claims against Mr. Moran and seek no relief from him. To the contrary, CIC and DCFS claim that Mr. Moran will benefit if First Trenton is successful. Therefore, even if he is a properly-joined party CIC and DCFS claim he should be realigned as a Plaintiff, which would result in total diversity and give this Court jurisdiction.

In the second pending motion, CIC and DCFS (collectively, "the moving defendants") seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) of the claims asserted

---

[1] CIC was formerly known as "DaimlerChrysler Insurance Company," and is referred to as such in some of the documents relevant to this action. For the sake of simplicity, the Court will use the company's current moniker throughout this ruling.

2

against them by First Trenton. In doing so, they contend that the terms of the lease, coupled with applicable state law, irrefutably demonstrate that CIC was not Mr. Moran's primary insurance provider, and First Trenton's claim to that effect therefore must be dismissed. Additionally, the moving defendants argue that First Trenton lacks standing to assert its second claim – in which it seeks declaratory judgment that CIC may not seek indemnification from Mr. Moran for the portion of the amount it contributed to the settlement – because such a claim would be brought against Mr. Moran pursuant to the terms of his lease agreement with DCFS, not against First Indemnity.

First Trenton counters by noting that, under the state law cited by the moving defendants, CIC would be liable for at least a portion of Mr. Moran's share of the settlement. Therefore, First Trenton argues that its request for declaratory judgment that CIC was a primary insurer should be allowed to proceed so that the Court can determine the amount of the latter company's liability. With respect to its second claim, First Trenton contends that the moving defendants' standing arguments are inapposite, and cites countervailing precedents purporting to show that CIC may not seek indemnification from Mr. Moran because applicable state law prohibits insurance companies from seeking such relief against their customers.

For the reasons set forth below, First Trenton's Motion to Remand will be denied. The moving defendants' request that the Court dismiss First Trenton's claims will be granted in part and denied in part.

## I. BACKGROUND

The facts of this case are undisputed, as are the terms of the lease agreement Moran entered into with DCFS on February 25, 2004. That agreement required Moran to maintain insurance coverage during the lease term, stating:

> Vehicle Insurance: You agree to provide primary insurance coverage as indicated during the Lease Term and until the Vehicle is returned: (a) liability insurance with limits of not less than $100,000 per person for bodily injury, $300,000 per accident for bodily injury, and $50,000 per accident for property damage.

(Def.'s Br. Supp. Mot. Dismiss, Aff. of Alan Levy ("Levy Aff."), Ex. B at 2.)[2]

Just below that clause, the lease agreement explicitly disclaimed any obligation on the part of DCFS to provide insurance for Moran in large, bold-faced type providing that "NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE." (Id.)

As discussed above, Moran was involved in an accident involving two other cars on March 20, 2004, less than a month after he leased the vehicle from DCFS. After a passenger in one of the other vehicles brought suit alleging that she suffered injuries due to the accident, DCFS and Moran entered a settlement agreement whereby the former paid $275,000 and the latter contributed $300,000. Moran's share was paid by First Trenton, while DCFS's was provided by CIC.

In this suit, First Trenton seeks to recover from DCFS and CIC some or all of the $300,000 it paid on behalf of Moran as part of the settlement. It states in its Complaint that "as a permissive user of the vehicle owned by DCFS Trust, [Moran was] an insured" of CIC "by operation of law and/or under the terms and conditions of the policy issued to DCFS." (Compl. ¶

---

[2] First Trenton did not attach the lease agreement as an exhibit to its Complaint. However, it specifically noted the existence of that agreement and the fact that it governed the terms of Moran's relationship with DCFS, stating that "[a]t the time of the accident, Moran was driving the vehicle with the permission of DCFS Trust pursuant to a lease agreement dated February 25, 2004." (Compl. ¶ 7.) Therefore, the Court may consider the lease agreement without converting the moving defendants' Motion to Dismiss into a request for summary judgment. In re Burlington Coat Factory Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (Although, "[a]s a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings … [but] a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal citations and quotations omitted).

11.) In fact, First Trenton not only claims that CIC provided insurance for Moran, it asserts that CIC was his primary insurer. (Compl. ¶ 12.) Based on those allegations, First Trenton requests declaratory judgment that (1) CIC was Moran's primary insurer and (2) "is obligated to provide defense and indemnification to Moran for the underlying action, including reimbursement to [First Trenton] of all costs and fees it expended in defending" the earlier lawsuit. (Compl. ¶ 17(a), (b).)

In a second claim, First Trenton attempts to preclude CIC from asserting what would essentially be the converse of this suit – namely, a claim against Moran seeking reimbursement from First Trenton for the $275,000 CIC paid pursuant to the settlement. In doing so, First Trenton alleges that CIC "has indicated that it may assert a claim for contribution and/or indemnification against its insured, Moran, for payments made … in settlement of the underlying lawsuit," and argues that such a claim "would be barred by the terms and conditions of the lease, the relevant insurance policies, equitable principles and doctrines, and applicable law." (Compl. ¶¶ 15, 16.) Based on those assertions, First Trenton requests declaratory judgment stating that CIC "is barred from pursuing any claim against Moran seeking contractual and/or common law indemnification and/or contribution." (Compl. ¶ 17(c).)

On May 20, 2010, DCFS and CIC removed to this Court. In doing so, they provided no explanation of the purported grounds for federal jurisdiction other than checking the box labeled "Diversity" on the civil cover sheet provided by the Court. Elsewhere on that form, the moving defendants referred to the litigation as a "diversity insurance action." In the section of that document reserved for the names of the defendants, DCFS and CIC listed themselves, but omitted Moran.

## II. DISCUSSION

Arguing that removal was improper because both it and Moran are citizens of New Jersey, First Trenton now moves to remand. In doing so, First Trenton devotes the bulk of its papers to rebutting the moving defendants' assertion that Moran was fraudulently joined, contending that (1) it was required by New Jersey law to include him as a defendant because he has an interest in the outcome of this case, and (2) even if he was not a necessary party under New Jersey law, Moran was properly included as a defendant under both the mandatory joinder requirements of Federal Rule of Civil Procedure 19 and the permissive joinder provision contained in Federal Rule of Civil Procedure 20. In a secondary argument, First Trenton contends that the Notice of Removal filed by CIC and DCFS violated what it refers to as the so-called "rule of unanimity," which generally requires that all defendants join in the removal petition.

In opposing First Trenton's Motion to Remand, CIC and DCFS reiterate their allegation – implied but not explicitly stated in their Notice of Removal – that Moran was fraudulently joined. Based on that assertion, they contend that his citizenship should be ignored when determining whether this Court has jurisdiction under 28 U.S.C. § 1332. Specifically, CIC and DCFS note that First Trenton's Complaint seeks no monetary or declaratory relief from Moran, and argue that his inclusion as a defendant was motivated solely by a desire to preclude federal diversity jurisdiction. Rather than seeking relief from Moran, CIC and DCFS contend that First Trenton's declaratory judgment claims are brought on his behalf. Therefore, they request that the Court either realign him as a plaintiff or dismiss him from the action entirely – either of which would result in total diversity between plaintiffs and defendants and the denial of First Trenton's Motion to Remand.

In the second pending Motion, CIC and DCFS argue that First Trenton's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a cognizable claim for relief. With respect to the First Trenton's request for declaratory judgment that CIC was Mr. Moran's primary insurer, they note that the terms of the lease specifically stated that Mr. Moran was required to obtain his own primary insurance coverage for the vehicle and that such coverage would not be provided by DCFS. Moreover, the moving defendants argue that because the accident out of which this litigation arises occurred in New York, the DCFS's potential vicarious liability for Mr. Moran's actions is governed by New York law. Pointing out that § 388 of New York's Vehicle and Traffic Law ("NYVTL") only requires lessors to provide coverage of up to $25,000 per accident for bodily injury, CIC and DCFS argue that their maximum liability should be limited to that amount, and First Trenton's request for declaratory judgment that CIC may not seek indemnification for the remainder of the $275,000 it paid pursuant to the settlement should be rejected.

Additionally, the moving defendants contend that First Trenton lacks standing to pursue its request for declaratory judgment that CIC is barred from seeking indemnification from Mr. Moran for the amount it contributed to the settlement. In doing so, the moving defendants characterize any claim they might bring against Moran as being premised on the lease agreement, and argue that since First Trenton was not a party to that contract, it may not seek to bar such a suit.

In its opposition to the pending Motion to Dismiss, First Trenton contends that CIC's invocation of NYVTL § 388 amounts to an admission that it was responsible for at least $25,000 of Mr. Moran's portion of the settlement. Based on that purported admission, First Trenton argues that the first claim in its Complaint – which seeks declaratory judgment that CIC was Mr.

7

Moran's primary insurer and a determination of the amount of that company's liability – is legally-cognizable and should not be dismissed. With respect to its second claim, First Trenton disputes the moving defendants' contention that it lacks standing. As part of that argument, First Trenton claims that its request for declaratory judgment that CIC and DCFS are barred from seeking indemnification from Moran is not based on the terms of the lease agreement, but rather on the purported relationship between those parties. Specifically, First Trenton alleges that CIC was Moran's insurer – an assertion which, as set forth above, CIC disputes – and that as such, it is barred from seeking indemnification because insurers cannot legally achieve that relief from their clients.

The pending Motions implicate different standards of review. Since the questions raised by the Motion to Remand are jurisdictional, the Court will address that Motion before turning to the question of whether First Trenton's substantive allegations state a cognizable claim for relief.

**A. Motion to Remand**

First Trenton's Motion to Remand is governed by 28 U.S.C. § 1447(c), which states that:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

Under that standard, the Court rejects as a preliminary matter First Trenton's argument that the case should be remanded because Moran did not join in the removal petition. "Failure of all defendants to join [in the removal petition] is a 'defect in removal procedure' within the meaning of § 1447(c), but is not deemed to be jurisdictional." Balazik v. County of Dauphin, 44 F.3d 209, 213 (3d Cir. 1995). Thus, First Trenton was required to assert any challenge to removal based on Moran's failure to join the removal petition within 30 days after the case was

8

removed. It did not do so. As discussed above, CIC and DCFS removed to this Court on May 20, 2010. First Trenton filed its Motion to Remand on June 21, 2010 – 31 days later. Therefore, 28 U.S.C. § 1447(c) requires that First Trenton's arguments based on procedural defects in removal be rejected.[3]

First Trenton's contention that this Court lacks subject matter jurisdiction is similarly unavailing. "In a suit with named defendants who are not of diverse citizenship from the plaintiff, the diverse defendant may still remove the action if it can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." In re Briscoe, 448 F.3d 201, 216 (3d Cir. 2006). In such situations, a district court may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Id. (quoting Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999)).

"Joinder is fraudulent if [1] 'there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or [2] no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" Id. (quoting Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 32 (3d Cir. 1985)). The standard used to determine whether a claim is "colorable" for the purposes of determining whether a defendant was fraudulently joined is significantly more forgiving than that used to decide a motion to dismiss. Id. at 218. "A district court must rule out any possibility that a state court would entertain the cause before holding that joinder of a non-diverse defendant was fraudulent." Id. at 219. Thus, a district court attempting to determine whether a defendant was fraudulently joined must "pierce the

---

[3] Even if First Trenton had asserted its procedural defect argument within 30 days of removal as required by 28 U.S.C. § 1447(c), that argument would be unavailing in light of the Court's ruling that Moran was fraudulently joined. See Balazik, 44 F.3d at 213 ("The unanimity rule may be disregarded where: (1) a non-joining defendant is an unknown or nominal party; or (2) where a defendant has been fraudulently joined.").

pleadings to determine whether a plaintiff has asserted a colorable claim against the non-diverse defendant." Id. at 218 (quotation omitted).

On review of the pleadings in this case, it is clear that Moran's joinder as a defendant was fraudulent. First Trenton's Complaint asserts no causes of action against Moran. It does not allege that he is subject to any monetary liability or other obligation. To the contrary, it seeks declaratory judgment relating only to the obligations of CIC and DCFS. Therefore, the Court finds no possibility whatsoever that a state court would entertain a claim against Moran, and rules that he was fraudulently joined as a defendant.

While Moran may, as asserted by First Trenton, have an interest in the outcome of this litigation, such an interest does not mean that he may be properly joined as a defendant. "Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941). It is the Court's duty "to look beyond the pleadings and arrange the parties according to their sides in the dispute." Id. In doing so, courts in this circuit follow the "primary purpose" test, "under which a court must first identify the primary issue in controversy and then determine whether there is a real dispute by opposing parties over that issue." Emp'rs Ins. of Wasau v. Crown Cork & Seal Co., Inc., 942 F.2d 862, 864 (3d Cir. 1991).

As discussed above, First Trenton's primary purpose in bringing this suit is two-fold: (1) it seeks reimbursement for the $300,000 it paid on Moran's behalf as part of the settlement, and (2) hopes to preclude CIC and DCFS from pursuing an indemnification claim against Moran for the $275,000 CIC contributed to the settlement. Moran will benefit if First Trenton is successful in its second claim – he will be relieved from the expense of defending an indemnification suit and potential liability for $275,000 in damages. In short, First Trenton and Moran "are joined in

10

their common goal of avoiding obligations to" DCFS and CIC. <u>Id.</u> at 866 (realigning parties based on such a "common goal"). Therefore, Moran is more properly classified as a plaintiff than a defendant, and will be realigned as such.

The realignment of Moran as a plaintiff results in complete diversity between plaintiffs and defendants. In light of that diversity and the fact that the amount in controversy is undisputedly greater than $75,000, this Court has jurisdiction over First Trenton's claims pursuant to 28 U.S.C. 1332. Accordingly, the Motion to Remand will be denied.

**B. Motion to Dismiss**

Having ruled that it has jurisdiction over First Trenton's claims, the Court must turn to the substance of those claims in order to decide the Motion to Dismiss submitted by DCFS and CIC. In doing so, it must apply the standard of review applicable under Federal Rule of Civil Procedure 12(b)(6) and examine the allegations contained in First Trenton's Complaint in order to determine whether they state a cognizable claim for relief.

   *i.*     *Standard of Review*

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). The Court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." <u>In re Rockefeller Ctr. Prop., Inc.</u>, 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

### ii.     First Trenton's Claims

As discussed above, First Trenton asserts two claims. In the first, it argues that CIC was Moran's primary insurer "by operation of law and/or under the terms and conditions of the policy issued to DCFS." (Compl. ¶ 11.) Based on that allegation, First Trenton seeks to recover from DCFS and CIC some or all of the $300,000 it contributed on behalf of Moran as part of the settlement.

First Trenton's claim that it is entitled to reimbursement for the money it paid on behalf of Moran implicates three distinct questions: (1) whether Moran was an insured of CIC under the terms of the lease agreement, (2) whether CIC was obligated "by operation of law" to provide insurance for Moran, and finally (3) whether any coverage provided by CIC was Moran's "primary" coverage. Since the facts of this case are undisputed, all turn on legal questions – namely, the interpretation of the lease agreement and applicable state law.

The first question implicated by First Trenton's claim for reimbursement – whether Moran was an insured of CIC under the terms of his lease with DCFS – must be answered in the negative. As discussed above, the lease agreement clearly stated that "NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE." (Levy Aff., Ex. B at 2.) Similarly, it appears clear that CIC was not Moran's primary insurer pursuant to the terms of the lease agreement. That agreement included the explicit requirement that Moran "provide primary insurance coverage … during the lease term." (Id.)

Whether CIC provided insurance – primary or otherwise – to Moran "by operation of law," however, is a more complicated issue. In its Complaint, First Trenton contends that Moran was insured by CIC due to his status "as a permissive user of the vehicle owned by DCFS Trust."

13

(Compl. ¶ 11.) Thus, First Trenton's allegation that CIC provided insurance coverage for Moran is premised on a type of vicarious liability. It asserts that, because CIC insured DCFS, the former company would be responsible for the settlement costs to the extent of the latter's liability arising out of Moran's March 20, 2004 accident.

First Trenton's Complaint does not enumerate the state law provisions on which that claim depends. However, both New York (where the accident occurred) and New Jersey (the state in which Moran entered into the lease agreement and resided) had statutes governing the liability of insurers such as CIC at the time of the accident and subsequent lawsuit. Under NYVTL § 388, such insurers were required to provide at least $25,000 in coverage for individuals who leased vehicles owned by the companies they insured. NYVTL § 388(1) ("Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use of that vehicle."); Allianz Ins. Co. v. Otero, 353 F. Supp.2d 415, 425 (S.D.N.Y. 2004) (noting the "statutory minimum coverage" under NYVTL § 388 of "at least $25,000 per occurrence"). New Jersey had a similar statute, which required insurers to provide a minimum of $15,000 in coverage.[4] N.J. Stat. Ann. § 45:21-3 (requiring that lessors provide a "policy of insurance" covering accidents due to the negligence of lessees); Hanco v. Sisoukraj, 834 A.2d 443, 446 (N.J. Super. Ct. App. Div. 2003) (New Jersey law "requires automobile leasing companies to maintain liability insurance in the minimum amount of $15,000/ $30,000 covering 'the owner or the lessee or bailee.'" (quoting

---

[4] Those statutes have since been preempted by the so-called "Graves Amendment," 49 U.S.C. § 30106, which precludes accident victims injured by an individual driving a leased vehicle from seeking to hold the lessor company vicariously liable. The Graves Amendment applies only to actions commenced on or after August 10, 2005. 49 U.S.C. § 30106(c). Since the action out of which the settlement for which First Trenton now seeks indemnification was filed on March 3, 2005, the Graves Amendment does not apply and the Court must look to the state statutes in effect at the time in order to determine whether CIC and DCFS may be held liable for some portion of First Trenton's settlement costs.

N.J. Stat. Ann. § 45:21-3)). Thus, regardless of whether New York or New Jersey law governs – a question that need not be answered at this preliminary stage – CIC would be liable for some portion of the $300,000 First Trenton paid on behalf of Moran as part of the settlement. Therefore, First Trenton's claim seeking a declaratory judgment that Moran was insured by CIC and setting the amount of that company's liability may proceed. However, in light of the portions of the lease agreement set forth above – which clearly stated that Moran was required to obtain his own "primary insurance coverage" and attempted to limit CIC and DCFS's liability by stating that no insurance coverage was included in the lease – the portions of that claim seeking a declaration that CIC was Moran's "primary" insurer are clearly precluded and will be dismissed with prejudice. Moreover, because CIC's potential liability is premised purely on the existence of state statutes requiring that it provide insurance coverage to Moran and the lease agreement attempted to disclaim such coverage to the greatest extent possible, the extent of CIC's obligations will be limited to the minimum amount mandated by the applicable law. See Hanco, 834 A.2d at 446-447 ("A policy which purports to have a more restrictive omnibus coverage [than required by N.J. Stat. Ann. § 45:21-3] is automatically amended to conform to the statutory standard," but "since there is no statutory requirement for coverage greater than the designated statutory limits, the reformation of a policy to conform with the statute requires no greater coverage than the statute itself mandates."); Morris v. Snappy Car Rental, Inc., 84 N.Y.2d 21, 27-28 (N.Y. 1994) ("[A]n attempt to disclaim completely the liability imposed by [NYVTL §] 388 would be contrary to public policy," but a lessor "can legally disclaim that portion of its liability which exceeds the amount for which motor vehicle owners are required to be insured under" that statute.).

In contrast, First Trenton's second claim – which seeks declaratory judgment that CIC may not pursue an indemnification suit against Moran for the $275,000 it paid on behalf of DCFS as part of the settlement – must be dismissed. First Trenton does not have standing to assert such a claim because the suit that it attempts to preclude would be brought against Moran, not First Trenton. Federal Rule of Civil Procedure 17(a)(1) sets forth the general rule that a party must have standing in order to bring suit, stating that "[a]n action must be prosecuted in the name of the real party in interest." It includes a limited list of exceptions that "may sue in their own names without joining the person for whose benefit the action is brought," but does not mention insurers such as First Trenton. See Fed. R. Civ. P. 17(a)(1)(A)-(G).

Moreover, an examination of the practical implications on the various parties of an indemnification suit brought by CIC or DCFS against Moran demonstrates that the harm First Trenton seeks to avoid is hopelessly speculative. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (In order to have standing, "the plaintiff must have suffered an injury in fact – an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical" which is likely to be "redressed by a favorable decision.") (internal quotations and citations omitted). If CIC and DCFS brought such a suit – which they have yet done – Moran might, in turn, seek indemnification from First Trenton. Of course, he might not. There is simply no way of knowing with any certainty how Moran would choose to defend such a suit.

Even if Moran did seek indemnification from First Trenton, that decision would not necessarily have the practical effect of making First Trenton a de facto defendant by opening it to the entirety of CIC and DCFS's claimed damages. To the contrary, Moran could seek indemnification from First Trenton only to the extent that his liability was less than the

16

maximum amount of benefits available under his insurance policy with that company. He would be personally liable for any overage. In short, the various obligations arising out of such a suit – if one is ever filed – would be governed by two distinct agreements. The first involves only Moran, CIC and DCFS, and the second involves only Moran and First Trenton.[5] There is simply no direct link between First Trenton and either CIC or DCFS. Therefore, First Trenton does not have standing to seek a declaratory judgment that CIC and DCFS may not sue Moran, and its claim to that effect must be dismissed with prejudice.

---

[5] The plaintiffs in such a suit would be CIC and DCFS, the defendant would be Moran, and First Trenton – if added – would be a third-party defendant. First Trenton would benefit if Moran prevailed against CIC and DCFS because such a development would render Moran's third-party claim against it moot. But the fact that an individual or entity may indirectly benefit from another's success in litigation does not, in itself, confer standing. For example, the creditors of a company may benefit if that company successfully defends a suit that would potentially drive it into bankruptcy, but that fact alone does not mean that the creditors may bring a preemptive action to preclude such a suit.

## III.  CONCLUSION

For the reasons set forth above, First Trenton's Motion to Remand is denied.  The moving defendants' Motion to Dismiss is granted in part and denied in part.  First Trenton's request for declaratory judgment that CIC was an insurer of Moran may proceed, but to the extent that First Trenton alleges that CIC was Moran's "primary" insurer, that claim is dismissed with prejudice.  First Trenton's request for declaratory judgment that CIC may not pursue an indemnification suit against Moran for the portion of the settlement it paid on behalf of DCFS is dismissed with prejudice.

The Court will enter an Order implementing this Opinion.


　　　　　　　　　　　　　　　　　　　　 **s/ Dickinson R. Debevoise**　　　　　　
　　　　　　　　　　　　　　　　　　　　DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:  September 20, 2010